**ESTATE OF Mary Ella Hayes CATLIN,
Deceased, et al., Appellants,**

v.

**GENERAL MOTORS CORPORATION,
Fluor Daniel, Inc., R.C. Sandles, John
Senna, and Stewart Heaton, Appellees.**

No. 14–94–00602–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 19, 1996.

W. Douglas Matthews, Sheryl L. Mulliken, Houston, for appellants.

Janet D. Chafin, James W. Goolsby, James L. Gascoyne, Houston, for appellees.

Before LEE, HUDSON and EDELMAN,JJ.

## OPINION ON MOTION
## FOR REHEARING

LEE, Justice.

Appellant's Motion for Rehearing is overruled. We withdraw our opinion dated September 5, 1996, and substitute the following.

Appellants, the Estate of Mary Catlin and her heirs (Catlin Estate), appeal a take-nothing summary judgment granted in favor of Fluor Daniel, Inc. and its employees, R.C. Sandles, John Senna and Stewart Heaton (Fluor Daniel and its employees). The trial court granted summary judgment based on its holding that Flour Daniel and its employees did not owe a duty to Mary Catlin. In two points of error, the Catlin Estate complains of the summary judgment and the assessment of ad litem fees. We affirm.

This action stems from an automobile accident in which Mary Catlin was killed as a result of a collision with an automobile driven by a Fluor Daniel employee, Edison Davis. Davis had become intoxicated at a "fish fry" held on Fluor Daniel property and which was attended by several Fluor Daniel employees and other people. The fish fry was initiated by Sandles, a Fluor Daniel's employee. He arranged for the fry to be held on a grassy field on Fluor Daniel property following a company softball game. Alcohol for the gathering was either purchased from funds

collected from the people who attended or was brought by some of the individuals. The party started at approximately 4:30 in the afternoon. Sandles left at 8:30 immediately after Fluor Daniel's tables and chairs were returned to their appropriate places. However, several people, including Davis, stayed in the grassy field until late in the evening. During the fish fry and after, Davis consumed "lots of beers and hard liquor." After leaving the fish fry, Davis and a co-worker stopped at a bar. At approximately midnight, when the bar closed, Davis left the bar. While enroute from the bar, Davis' vehicle hit Catlin's Chevrolet Chevette resulting in Catlin's death.

The Catlin Estate originally brought suit against General Motors and the intoxicated driver, Davis. After reaching a settlement with General Motors compensating the estate for its actual damages and dismissing General Motors from the suit, the Catlin Estate filed suit against Fluor Daniel and its employees and the bar. Later, the estate nonsuited Davis and the bar from the case, leaving only Fluor Daniel and its employees as defendants.

Fluor Daniel and its employees moved for summary judgment contending that they did not owe a duty to an unknown third-party, Mary Catlin. The estate countered with a motion for a partial summary judgment arguing that it had established a duty and a breach of that duty. The trial court granted Fluor Daniel a summary judgment and denied the estate's motion. Subsequently, the trial court held a hearing and determined the appropriateness of the ad litem fees. The court assessed the ad litem fees against the estate's attorneys.

In its first point of error, the estate contends that the trial court improperly granted Fluor Daniel and its employees a summary judgment. The standard of review to be followed in a summary judgment is well-established. The movant has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. Every reasonable inference must be indulged in favor of the non-movant and any doubts are resolved in his favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984); *Karl v. Oaks Minor Emergency Clinic*, 826 S.W.2d 791, 794 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

Summary judgment for the defendant is proper when the proof shows that no genuine issue of material fact exists on one or more of the essential elements of the plaintiff's cause of action, or when the defendant establishes each element of an affirmative defense as a matter of law. *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex.1990). A defendant who moves for summary judgment has the burden of showing as a matter of law that no material issue of fact exists on the plaintiff's cause of action. *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 166–67 (Tex.1987).

The function of a summary judgment is not to deprive a litigant of its right to a full hearing on the merits of any real issue of fact, but to eliminate patently unmeritorious claims and untenable defenses. *Dallas Cent. Appraisal Dist. v. G.T.E. Directories Corp.*, 905 S.W.2d 318, 319 (Tex.App.—Dallas 1995, writ denied). The purpose of the summary judgment rule is not to provide a trial by deposition or a trial by affidavit, but to provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that no genuine issue of material fact remains. *Id.* at 320.

■ Appellees moved for summary judgment arguing lack of duty. The Catlin Estate admits that this is neither a dram shop case, nor a social host liability case. Rather, the estate argues that Fluor Daniel used its "special relationship of employer-employee" to control the activity of its employees on its property. Thus, the estate argues that Fluor Daniel assumed a duty by its actions and because it instituted a plan to control the consumption of alcohol on its premises and at company sponsored events.

At the time of Catlin's death, Fluor Daniel had implemented a safety policy which for-

bade the consumption of alcohol on company property except at company sponsored events. A violation of the policy was grounds for immediate discharge. The Houston office of Fluor Daniel had formalized procedures to be followed when employees were going to consume alcohol on company property. The procedures required a detailed written plan to control the consumption of alcohol, designation of a person "in charge" and special security procedures. These procedures were either not complied with or only partially complied with on the evening when Catlin was killed.

On the day of the fish fry, the head of security for Fluor Daniel discovered that Sandles and some of his co-workers from the Utility Service Department were holding the fish fry that evening. The head of security was aware that a form was required to be submitted to the operational manager for company functions before alcohol could be served. He determined that it would, therefore, be best to bring the fish fry to the attention of management. He attempted to locate Sandles so that the form could be completed, but was unable to locate him. He, however, did locate Senna, Manager of Administrative Facilities and Services. Senna completed the form and sent it to Heaton for approval. Because Sandles was the person responsible for the fish fry, Heaton signed the form. Neither Heaton nor Senna attended the fish fry.

The Catlin Estate asserted that the written form did not comply with Fluor Daniel policy because it did not indicate a starting and completion time and because it did not specify how the consumption of alcohol was going to be controlled or monitored. In addition, the estate contended that Sandles violated the Fluor Daniel procedures by leaving before the "party" was over without appointing a substitute "person in charge." The estate also contended that the company violated its own policy because the security department did not act to determine whether anyone appeared to be intoxicated. Instead, a security officer drove by and yelled, "be careful" and kept going.

The common law doctrine of negligence consists of three elements: a legal duty owed by one person to another, a breach of that duty, and damages proximately resulting from the breach. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987). The estate contends that Fluor Daniel assumed the duty to control the consumption of alcohol on its property by establishing its alcohol procedures. The estate also maintains that Fluor Daniel and its employees then breached this duty because they failed to comply with the policies and procedures.

The threshold inquiry in a negligence action is determining whether the defendant owed a duty to the plaintiff. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex. 1995). In determining whether to impose a duty we are to consider the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury and the consequences of placing that burden on the actor. *Bird v. W.C.W.,* 868 S.W.2d 767, 769 (Tex.1994); *Otis Eng'g Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex. 1983).

As a general rule, a person does not have a duty to control the conduct of another even when the person has the practical ability to do so. *Graff v. Beard,* 858 S.W.2d 918, 920 (Tex.1993). However, an employer may be "liable for the off-duty torts of its employees which are committed on the employer's premises or with the employer's chattels." *Otis Eng'g,* 668 S.W.2d at 309. The duty established in *Otis* is as follows:

> when, because of an employee's incapacity, an employer exercises control over the employee, the employer has a duty to take such action as a reasonably prudent employer under the same or similar circumstances would take to prevent the employee from causing an unreasonable risk of harm to others.

*Id.* at 311 (citing RESTATEMENT (SECOND) OF TORTS § 317 (1965)).[1] This duty, however,

---

1. Section 317 of the restatement provides:

> A master is under a duty to exercise reasonable care so to control his servant while acting

"is not an absolute duty to insure safety, but requires only reasonable care." *Id.* In addition, Texas courts of appeals and the supreme court have shown an unwillingness to enlarge the duty established in *Otis* to include situations where the employer either had no knowledge of the employee's condition or did not exercise control over the employee. *DeLuna v. Guynes Printing Co. of Texas,* 884 S.W.2d 206, 210 (Tex.App.—El Paso 1994, writ denied) (citing *J & C Drilling Co. v. Salaiz,* 866 S.W.2d 632, 639 (Tex. App.—San Antonio 1993, no writ); *Moore v. Times Herald Printing Co.,* 762 S.W.2d 933, 934 (Tex.App.—Dallas 1988, no writ); *Pinkham v. Apple Computer, Inc.,* 699 S.W.2d 387, 390 (Tex.App.—Fort Worth 1985, writ ref'd n.r.e.)); *see also Graff,* 858 S.W.2d at 920 (Tex.1993); *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523 (Tex.1990).

We find that the duty established in *Otis* did not apply to Mary Catlin. First, there is no indication in the record that Fluor Daniel or its employees knew that Davis was intoxicated to the point of "incapacity." In order for a duty to third persons to arise, an employer must perform some affirmative act of control over an "incapacitated employee." *DeLuna,* 884 S.W.2d at 210; *Moore,* 762 S.W.2d at 934. The duty imposed upon the employer in *Otis* was not imposed "because of the mere knowledge of the intoxication, but because the employers' *negligent exercise of control* over the employee." *Greater Houston Transp.,* 801 S.W.2d at 526 (emphasis in original). Because there is no summary judgment evidence indicating that Fluor Daniel or its employees knew that Davis was intoxicated and exerted any control over him, *Otis'* narrow duty imposed on employers to third persons does not apply.

Second, we find that Fluor Daniel's activities did not amount to an attempt to control the activities of its employees that would create a legal duty to third parties. The Catlin Estate argues that because Fluor

Daniel adopted a policy regarding the consumption of alcohol on its premises, and thereafter failed to follow the policy, a legal duty to third parties was created. The Estate further argues that by creating the policy, Fluor Daniel assumed the responsibility to control consumption of alcohol on its premises *and subsequent* driving by its employees, and it had a duty to exercise that control in a reasonable manner.

We conclude that the mere creation of an internal policy regarding consumption of alcohol on the premises, whether or not the fish fry was a "company function," does not create a duty as set forth in *Otis.* More is required. In *Otis,* the employer had *actual knowledge* of the intoxication and then performed an *affirmative act of control.* These elements are not present in this case. To accept the Estate's argument would impermissibly extend the test set forth in *Otis* and discussed in *DeLuna.* Fluor Daniel did not assume a duty to third parties by its limited activities in this case.

In their second point of error, the Catlin Estate maintains that the trial court erroneously assessed the attorney ad litem fees against its attorneys, personally. A month after the trial court granted summary judgment in favor of Flour Daniel and its employees, the trial court held a hearing on attorney ad litem fees. Neither party disputed the reasonableness or necessity of the ad litem fees or that they were all incurred after the settlement with General Motors. The only dispute revolved around which party should be responsible for paying the fees. After discussions between the court and counsel for both sides, the trial court determined that the fees would be paid by the estate's counsel. The following statements were made by the court in conjunction with completing the form:

outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
(a) the servant
  (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
  (ii) is using a chattel of the master, and
(b) the master
  (i) knows or has reason to know that he has the ability to control his servant, and
  (ii) knows or should know of the necessity and opportunity for exercising such control.

I am going to use our standard form of order because the Clerk was noticed to look for it, so what was that?

. . .

This says this will be paid from previous settlement funds, will be paid by Plaintiff's counsel from previous settlement funds. I don't really care. I was filling in a blank. I will mark that out and say it's paid by Plaintiff's counsel.

■ "The award of guardian ad litem fees is in the sound discretion of the trial court." *Simon v. York Crane and Rigging Co.,* 739 S.W.2d 793, 794 (Tex.1987). A reviewing court may not set aside the award, absent evidence illustrating a clear abuse of discretion. *Id.* The test for determining abuse of discretion by the trial court is "whether the trial court acted without reference to any guiding rules and principles." *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); *see also Roark v. Mother Frances Hosp.,* 862 S.W.2d 643, 646 (Tex.App.—Tyler 1993, writ denied).

■ A trial court can only appoint a guardian ad litem when there is a conflict of interest between the minor and next friend. *Brownsville–Valley Regional Medical Ctr., Inc. v. Gamez,* 894 S.W.2d 753, 755 (Tex. 1995). Once the conflict ends, the trial court should remove the guardian ad litem. *Id.* A guardian ad litem may not recover fees for post-litigation services or services rendered after resolution of the conflict for which he or she was appointed. *Id.* at 756–57. A guardian ad litem is not an attorney for the child, but an officer appointed by the court to assist in properly protecting the child's interests. *American Gen. Fire and Casualty Co. v. Vandewater,* 907 S.W.2d 491, 493 n. 2 (Tex. 1995). The guardian ad litem is required to participate in the case to the extent necessary to protect the minor. *Id.*

■ The attorney ad litem in this case was appointed pursuant to rule 173 which provides:

When a minor . . . is a party to a suit . . . the court shall appoint a guardian ad litem for [the minor] and shall allow him a rea-

sonable fee for his services to be taxed as a part of the costs.

Tex.R. Civ. P. 173. Rule 131 provides that a successful party generally will recover all of his costs from his adversary. However, rule 141 provides:

The court may, for good cause, to be stated on the record, adjudge the costs otherwise than as provided by law or these rules.

Tex.R. Civ. P. 141. The estate argues that there was no good cause shown why the ad litem fees should be paid by its attorney, an individual non-party. In support of its argument, the estate only cites *Dover Elevator Co. v. Servellon,* 812 S.W.2d 366 (Tex.App.— Dallas 1991, no writ) and states that the trial court's actions were contrary to or not authorized by rule 131. Rule 131 only provides the general rule that a successful party is to recover his costs from his adversary. *See* Tex.R.App. P. 131. In *Dover* the Dallas court held that a trial court must set forth the basis for its finding why costs should be assessed against a prevailing party, contrary to rule 131. Neither of these authorities directly address the issue presented in this case.

■ On the other hand, this court, in *Newman v. Link,* 866 S.W.2d 721 (Tex. App.—Houston [14th Dist.] 1993), *writ denied,* 889 S.W.2d 288 (Tex.1994), held that a court could assess ad litem fees against an attorney to be paid out of the funds recovered in a personal injury action. In personal injury cases, attorneys are compensated out of the funds recovered by the plaintiff on a contingency basis. As such, the attorney has an interest in the outcome of the litigation and will be treated as a party even though he may not be a nominal party. *Id.* at 725; *Vance v. Davidson,* 903 S.W.2d 863, 866 n. 2 (Tex.App.—Houston [14th Dist.] 1995, orig. proceeding).

The trial court found that the ad litem was essentially aligned with the estate's attorneys in their representation of all the plaintiffs and that the ad litem's fees were incurred in conjunction with the plaintiffs' case. The court stated:

I believe it is appropriate, because what he was doing was assisting Plaintiff's counsel,

that it be paid by Plaintiff's counsel out of their fees.

. . .

That is why I am just saying by Plaintiff's counsel. I have marked out the source.

. . .

I don't consider it to be sanctions against the attorney. What I am suggesting in reviewing the time that you spent, that the time that you spent was time on behalf of the Plaintiff's on behalf of the child as counsel for the Plaintiff.

Consistent with our holdings in *Newman* and *Vance*, the trial court assessed the ad litem fees against the plaintiffs' attorney. The estate (including the minor plaintiffs) had already settled with General Motors, and, thus, there were settlement funds from the litigation available to pay to the ad litem. Because the trial court did not abuse its discretion in awarding ad litem fees to be paid by the estate's attorneys, we overrule the estate's second point of error.

The judgment of the trial court is affirmed.

EDELMAN, J., concurs in results only.